UNITED STATES DISTRICT COURT FOR THE
<u>WESTERN DISTRICT OF NEW YORK</u>

BRYCE STROBRIDGE, as Administrator of the
Estate of GARY EDWARD STROBRIDGE,  also
known as GARY STROBRIDGE, deceased,

                     Plaintiff,

vs.

CITY OF ELMIRA,
CITY OF ELMIRA POLICE DEPARTMENT,
LIEUTENANT WILLIAM SOLT,
CAPTAIN JOHN PERRIGO,
JOSEPH LINEHAN,
BRIANNA BORDEN,
AMANI HADLOCK,
EDUARDO OROPALLO,
JAMES SAMUELSON, and
KYLE THORPE,

                     Defendants,

_____

**COMPLAINT**

Case No.:

**JURY TRIAL
DEMANDED**

Plaintiff, BRYCE STROBRIDGE, as Administrator of the Estate of GARY EDWARD STROBRDIGE, also known as GARY STROBRIDGE, deceased, by and through his attorneys, VanDette Penberthy LLP, as and for his Complaint against Defendants CITY OF ELMIRA, CITY OF ELMIRA POLICE DEPARTMENT, and OFFICERS LIEUTENANT WILLIAM SOLT, CAPTAIN JOHN PERRIGO, JOSEPH LINEHAN, BRIANNA BORDEN, AMANI HADLOCK, EDUARDO OROPALLO, JAMES SAMUELSON, and KYLE THORPE, hereby alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.    This is an action for compensatory and punitive damages arising out of constitutional violations of Plaintiff's decedent's, GARY EDWARD STROBRIDGE's

("GARY STROBRIDGE") Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, to be free from the unlawful and excessive use of force by the CITY OF ELMIRA, the CITY OF ELMIRA POLICE DEPARTMENT and its officers LIEUTENANT WILLIAM SOLT, CAPTAIN JOHN PERRIGO, JOSEPH LINEHAN, BRIANNA BORDEN, AMANI HADLOCK, EDUARDO OROPALLO, JAMES SAMUELSON, and KYLE THORPE, and their individual and collective failures to intervene.

2.      This action is further brought against the CITY OF ELMIRA, CITY OF ELMIRA POLICE DEPARTMENT, and officers LIEUTENANT WILLIAM SOLT, CAPTAIN JOHN PERRIGO, JOSEPH LINEHAN, BRIANNA BORDEN, AMANI HADLOCK, EDUARDO OROPALLO, JAMES SAMUELSON, and KYLE THORPE under the state common law, for negligence and battery, as well as negligent training, supervision, retention, discipline, and hiring by the CITY OF ELMIRA and CITY OF ELMIRA POLICE DEPARTMENT.

## JURISDICTION AND VENUE

3.      This is a civil action seeking damages due to violations of Plaintiff's decedent's constitutional rights, under 42 U.S.C. § 1983. The Court has federal-question subject-matter jurisdiction over these causes of action pursuant to 28 U.S.C. § 1331.

4.      Additionally, this action includes causes of action arising under the laws of the State of New York, which derive from the same transactions and occurrences. Because, the facts concerning the federal and state law causes of action substantially

overlap, the Court has supplemental jurisdiction over the state-law causes of action pursuant to 28 U.S.C. § 1367.

5.      Under 28 U.S.C. § 1391, the United States District Court for the Western District of New York is the proper venue because a substantial part of the events or omissions giving rise to the claim occurred within Chemung County, in the State of New York, which is within this judicial district. Upon information and belief, all of the defendants reside in or are incorporated in this judicial district.

## CONDITIONS PRECEDENT

6.      Rule 9(c) conditions precedent to bring this claim have been performed.

7.      Plaintiff was awarded Limited Letters of Administration to administer the Estate of GARY STROBRIDGE on June 19, 2020. The Letters permit Plaintiff to compromise any wrongful death or related actions concerning the Estate of GARY STROBRIDGE.

8.      New York's General Municipal Law § 50-e ("Section 50-e") requires, in relevant part, that in any case founded upon a tort committed by a municipality, municipal corporation, or police officer, a "Notice of Claim" must be served upon the defendants that require such notice within ninety (90) days after the claim arises. On or about November 18, 2019, within 90 days of accrual of the  causes  of  action, Plaintiff  served  a  Notice  of  Claim  upon  defendants  CITY  OF  ELMIRA,  CITY OF ELMIRA POLICE DEPARTMENT, and John and/or Jane Does, said being City of Elmira Police Department personnel, by serving the corporation counsel for the municipal defendants.

## PARTIES

9.      At all times hereinafter mentioned, Plaintiff, BRYCE STROBRIDGE,

was the father and Administrator of the Estate of GARY STROBRIDGE.  At all times

hereinafter mentioned, Plaintiff's decedent, GARY STROBRIDGE, was a resident of

the CITY OF ELMIRA, residing at 316B Horner Street in the City of Elmira, County

of Chemung, within the State of New York.

10.      At all times hereinafter mentioned, defendant, CITY OF ELMIRA

("CITY") was a municipal corporation, organized and existing under the laws of the

State of New York, located within the Chemung County. Defendant, CITY was

responsible for the maintenance, training, supervision, retention, hiring, and

provision of a police force within its territorial jurisdiction.

11.      At all times hereinafter mentioned, defendant CITY OF ELMIRA POLICE

DEPARTMENT ("ELMIRA POLICE") was an administrative arm of the CITY, tasked

with law enforcement and keeping the peace within defendant, CITY's territorial

jurisdiction. Upon information and belief, the ELMIRA POLICE and/or the CITY

employed the police officer defendants in this action.

12.      Upon information and belief, at all times hereinafter mentioned

LIEUTENANT WILLIAM SOLT ("SOLT") was a police officer and employee of the

CITY and ELMIRA POLICE, and working in his capacity as a police officer when he

participated in the apprehension and arrest of GARY STROBRIDGE at 305 Horner

Street, Elmira, New York. SOLT, individually and together with other police officers

employed by the CITY and/or ELMIRA POLICE contributed to and caused GARY

STROBRIDGE's serious injuries ultimately resulting in his death. At all times mentioned in this complaint, SOLT was a state actor, acting under color of state law pursuant to 42. U.S.C. § 1983, and is sued in his individual and official capacity.

13.     Upon information and belief, at all times hereinafter mentioned, CAPTAIN JOHN PERRIGO ("PERRIGO") was a police captain/officer and employee of the CITY and ELMIRA POLICE, and working in his capacity as a police officer when he participated in the apprehension and arrest of GARY STROBRIDGE at 305 Horner Street, Elmira, New York. PERRIGO, individually and together with other police officers employed by the CITY and/or ELMIRA POLICE contributed to and caused GARY STROBRIDGE's serious injuries, ultimately resulting in his death. At all times mentioned in this complaint, PERRIGO was a state actor, acting under color of state law pursuant to 42. U.S.C. § 1983, and is sued in his individual and official capacity.

14.     Upon information and belief, at all times hereinafter mentioned, JOSEPH LINEHAN ("LINEHAN") was a police officer and employee of the CITY and ELMIRA POLICE, and working in his capacity as a police officer when he participated in the apprehension and arrest of GARY STROBRIDGE at 305 Horner Street, Elmira, New York. LINEHAN additionally participated in the transport, apprehension, and use of excessive force of GARY STROBRIDGE at St. Joseph's Hospital in Elmira. LINEHAN, individually and together with other police officers employed by the CITY and/or ELMIRA POLICE contributed to and caused GARY STROBRIDGE's serious injuries, ultimately resulting in his death. At all times mentioned in this complaint,

LINEHAN was a state actor, acting under color of state law pursuant to 42. U.S.C. § 1983, and is sued in his individual and official capacity.

15.     Upon information and belief, at all times hereinafter mentioned, BRIANNA BORDEN ("BORDEN") was a police officer and employee of the CITY and ELMIRA POLICE, and working in her capacity as a police officer when she participated in the apprehension and arrest of GARY STROBRIDGE at 305 Horner Street, Elmira, New York. BORDEN, individually and together with other police officers employed by the CITY and/or ELMIRA POLICE contributed to and caused GARY STROBRIDGE's serious injuries, ultimately resulting in his death. At all times mentioned in this complaint, BORDEN was a state actor, acting under color of state law pursuant to 42. U.S.C. § 1983, and is sued in her individual and official capacity.

16.     Upon information and belief, at all times hereinafter mentioned, AMANI HADLOCK ("HADLOCK") was a police officer and employee of the CITY and ELMIRA POLICE, and working in his capacity as a police officer when he participated in the apprehension and arrest of GARY STROBRIDGE at 305 Horner Street, Elmira, New York. HADLOCK additionally participated in the transport, apprehension, and use of excessive force of GARY STROBRIDGE at St. Joseph's Hospital in Elmira. HADLOCK, individually and together with other police officers employed by the CITY and/or ELMIRA POLICE contributed to and caused GARY STROBRIDGE's serious injuries, ultimately resulting in his death. At all times mentioned in this complaint, HADLOCK was a state actor, acting under color of state law pursuant to 42. U.S.C. § 1983, and is sued in her individual and official capacity.

17.     Upon information and belief, at all times hereinafter mentioned, EDUARDO OROPALLO ("OROPALLO") was a police officer and employee of the CITY and ELMIRA POLICE, and working in his capacity as a police officer when he participated in the apprehension and arrest of GARY STROBRIDGE at 305 Horner Street, Elmira, New York. OROPALLO additionally participated in the transport, apprehension, and use of excessive force of GARY STROBRIDGE at St. Joseph's Hospital in Elmira. OROPALLO, individually and together with other police officers employed by the CITY and/or ELMIRA POLICE contributed to and caused GARY STROBRIDGE's serious injuries, ultimately resulting in his death. At all times mentioned in this complaint, OROPALLO was a state actor, acting under color of state law pursuant to 42. U.S.C. § 1983, and is sued in his individual and official capacity.

18.     Upon information and belief, at all times hereinafter mentioned, JAMES SAMUELSON ("SAMUELSON") was a police officer and employee of the CITY and ELMIRA POLICE, and working in his capacity as a police officer when he participated in the apprehension and arrest of GARY STROBRIDGE at 305 Horner Street, Elmira, New York. SAMUELSON, individually and together with other police officers employed by the CITY and/or ELMIRA POLICE contributed to and caused GARY STROBRIDGE's serious injuries, ultimately resulting in his death. At all times mentioned in this complaint, SAMUELSON was a state actor, acting under color of state law pursuant to 42. U.S.C. § 1983, and is sued in his individual and official capacity.

19.     Upon information and belief, at all times hereinafter mentioned, KYLE THORPE ("THORPE") was a police officer and employee of the CITY and ELMIRA POLICE, and working in his capacity as a police officer when he participated in the apprehension and arrest of GARY STROBRIDGE at 305 Horner Street, Elmira, New York. THORPE additionally participated in the transport, apprehension, and use of excessive force of GARY STROBRIDGE at St. Joseph's Hospital in Elmira. THORPE, individually and together with other police officers employed by the CITY and/or ELMIRA POLICE contributed to and caused GARY STROBRIDGE's serious injuries, ultimately resulting in his death. At all times mentioned in this complaint, THORPE was a state actor, acting under color of state law pursuant to 42. U.S.C. § 1983, and is sued in his individual and official capacity.

## RELEVANT POLICIES AND PROCEDURES OF THE CITY OF ELMIRA AND ELMIRA POLICE

20.     At all times hereinafter mentioned, defendants CITY and/or ELMIRA POLICE, and SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, and THORPE were bound to uphold, follow, and obey the Constitution of the United States, the laws, rules and regulations of the State of New York, as well as their own policies and procedures concerning arrests, mental hygiene calls and custody, and detainee's rights.

21.     Upon information and belief, at all times hereinafter mentioned, the CITY and/or ELMIRA POLICE issued general orders and promulgated their own policies and procedures concerning the appropriate and authorized use of physical force in effectuating arrests (ELMIRA POLICE General Order 400), in the use of tasers

(ELMIRA POLICE General Order 411), in undertaking mental hygiene intervention and arrests (ELMIRA POLICE General Order 450), arrest procedures in general (ELMIRA POLICE General Order 500), and prisoner medical and safety procedures (ELMIRA POLICE General Order 511).

22.    It was the policy of the CITY and/or the ELMIRA POLICE that all use of physical force must be consistent with applicable legal standards and Department policies and procedures.

23.     Upon information and belief, as a prerequisite to the use of physical force, per defendants CITY and/or ELMIRA POLICE's orders, policies and procedures, officers should identify themselves and issue verbal warnings before using physical force.

24.    Upon information and belief, pursuant to the CITY and/or ELMIRA POLICE's general order concerning the prohibited use of tasers, tasers could not be used in a punitive or coercive manner, on a handcuffed prisoner absent resistance that would result in injury to the officer, to escort or prod individuals absent an emergency (unless approved by a supervisor).

25.    New York State Mental Hygiene Law § 9.41 permits a police officer to take a subject into custody for evaluation when he displays a substantial risk of physical harm to himself or others as manifested by, *inter alia*, conduct demonstrating that he is dangerous to himself, or makes threats of suicide or serious physical harm.

26.    Mental Hygiene arrestees were to be arrested in accordance with ELMIRA POLICE General Order 500, Arrest Procedures. A Mental Hygiene Law §9.41 arrest

does not require that a crime be committed, nor proof that the person presents immediate danger to others.

27.    Additionally, defendants CITY and/or ELMIRA POLICE issued orders and promulgated policies as to Mental Hygiene Intervention Procedures. The orders required among other things, officers to remain calm, to give clear and firm directions to subjects, and to be helpful and offer assistance to make the person feel safer. The orders prohibited confusing the subject, staring at the subject which could be interpreted as threatening, whisper, laugh or joke about the situation, or giving multiple choices to increase the subject's confusion.

28.    According to CITY and/or ELMIRA POLICE policies and orders, whenever ELMIRA POLICE officers or personnel transport or guard a prisoner taken to a hospital, said personnel must, inter alia, handcuff or secure the prisoner with restraining devices, except where the restraint would seriously impair treatment or aggravate the injury or illness, or if medical staff request removal of the restraint, in which case the request for removal by medical staff of restraints must be documented; if restraints are removed, officers are to remain in the examination room once restraints are removed, unless asked to step out for treatment, in which case the officers must remain alert and ready to assist. Officers were required to remain with prisoners at all times in the hospital.

29.    Additionally, policies and procedures prohibited permitting GARY STROBRIDGE from being left unattended while in the hospital on a mental health referral by the police.

10

## STATEMENT OF FACTS

30.    Upon information and belief, on August 22, 2019, in the early evening, GARY STROBRIDGE suffered a mental health episode in which he climbed onto the roof of his residence at 316B Horner Street, Elmira, New York. He was also observed hanging out of upstairs window of his residence, and glass was heard breaking.

31.    GARY STROBRIDGE was heard screaming that it was the end of the world. A group of residents had gathered around GARY STROBRIDGE's residence, importuning him to "get back in the window," presumably to get out of danger.

32.    As a consequence of observing these irrational actions, ELMIRA POLICE officers SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON were called to GARY STROBRIDGE's residence located at 316B Horner Street, Elmira, New York to take him into custody pursuant to the Mental Hygiene Law due to a complaint that decedent was atop of his roof in an altered mental state.

33.    Upon information and belief, ELMIRA POLICE and SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON arrived at GARY STROBRIDGE's residence while he was still on his roof, shouting, and exhibiting signs of a visible, altered mental state.

34.    Upon information and belief, ELMIRA POLICE and SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON did not announce their presence to GARY STROBRIDGE, and remained across the street

from GARY STROBRIDGE's residence, during this period while GARY STROBRIDGE was on the roof of his residence.

35.     Upon information and belief, GARY STROBRIDGE's neighbor approached GARY STROBRIDGE's property, and offered to help him clean up the mess he had made. The police officers were still present across the street.

36.     At this point, GARY STROBRIDGE entered a window through the rear of his house at 316B Horner Street, Elmira, New York, on the roof, and walked out of the front of his house, at ground level with the defendant officers SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON. Upon information and belief, approximately five minutes passed between the arrival of defendants-officers SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON and when GARY STROBRIDGE exited his residence.

37.     After GARY STROBRIDGE exited his residence, SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON should then have followed the CITY and ELMIRA POLICE protocols, policies, orders, and procedures in effectuating a Mental Hygiene Law arrest. Given the signs of danger to himself or others, these police officer should have promptly taken GARY STROBRIDGE into custody when he walked outside of his house. These police officer defendants failed to do so.

38.     Instead, SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON negligently permitted GARY STROBRIDGE, in this altered

mental state, to proceed to walk down the street without interference, in the direction of 305 Horner Street, and in the direction of the fellow resident and neighbor of that block that had approached GARY STROBRIDGE and offered to help him clean the mess made by the broken window.

39. Whereupon information and belief, this fellow resident and pedestrian screamed at the police officers to do their job.

40. At this point, in exhibition of further negligence of policies, procedures, orders, and protocols in responding to the Mental Hygiene/Mental Health call, one of the ELMIRA POLICE approached GARY STROBRIDGE from behind, and attempted to grab him. This action surprised GARY STROBRIDGE then threw a punch at this ELMIRA POLICE officer, whom then tackled and subdued GARY STROBRIDGE.

41. Following this event, the other officers including SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON joined the officer among them that tackled and subdued GARY STROBRIDGE, and one of these officers, upon information, a female ELMIRA POLICE officer negligently, unnecessarily, and in violation of policies, procedures, orders, the Constitution and the laws of the State of New York tasered GARY STROBRIDGE.

42. Following this event, officers SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON proceeded to attempt to gain control of GARY STROBRIDGE and take him into custody.

43.   Upon information and belief, ELMIRA POLICE officers transported GARY STROBRIDGE to St. Joseph's Hospital, located at 555 St. Joseph's Boulevard, Elmira, New York 14901.

44.   Upon information and belief, St. Joseph's Hospital is the designated hospital to which patients/arrestees are taken for mental hygiene/mental health calls in the City of Elmira.

45.   GARY STROBRIDGE was then taken to St. Joseph's Hospital, accompanied by defendants HADLOCK, OROPALLO, LINEHAN, and THORPE, and admitted to the emergency department at approximately 7:19 p.m., on August 22, 2019.

46.   At intake and assessment, GARY STROBRIDGE was noted to be delusional, presenting with a psychiatric problem, with no previous psychiatric history noted. Findings from the psychiatric exam revealed that GARY STROBRIDGE was oriented to person, place and time; his affect was agitated and anxious and his concentration, judgment and insight were poor.

47.   Upon information and belief, defendants HADLOCK, OROPALLO, LINEHAN, and THORPE escorted GARY STROBRIDGE to an examination room, removed his restraints, and left him unattended in the examination room, in violation of CITY and ELMIRA POLICE general orders, policies, and procedures.

48.   Upon information and belief, GARY STROBRIDGE, was left unattended and allowed to leave the examination room.

49.   After GARY STROBRIDGE left the examination room, he was taken to the ground by the officers. The officers then proceeded to gain control of GARY

STROBRIDGE. This occurred in the hallway, common area, or corridor of St Joseph's Hospital, outside of the examination room where he had been left unattended by the police officers.

50.     These officers handcuffed GARY STROBRIDGE from behind and face down on the floor of the of this common area.

51.     Upon information and belief, one of the officers positioned her/himself atop GARY STROBRIDGE's lower back, while his face was to the ground. Upon information and belief, one of the officers was additionally on top of and subduing GARY STROBRIDGE.

52.     At this point, the defendant officers at the scene had gained full control of GARY STROBRIDGE, as he was handcuffed and restrained.

53.     While GARY STROBRIDGE was face down on the floor, still entirely subdued by the officers in this prone position and handcuffed, defendant OROPALLO, standing above GARY STROBRIDGE, braced himself against the adjacent wall or doorjam, and, upon information and belief, violently pressed foot into GARY STROBRIDGE's neck/head area.

54.     While defendant OROPALLO's foot was pressed into GARY STROBRIDGE's neck/head area, GARY STROBRIDGE voiced or uttered a grunt.

55.     In response to the grunt made when Defendant OROPALLO's foot was pressed into GARY STROBRIDGE's neck or head area, defendant OROPALLO then forcibly grabbed GARY STROBRIDGE by the hair on the back of his head, and violently

slammed GARY STROBRIDGE's head and face in to the floor twice, yelling "Gary, stop resisting!"

56.    Immediately after having his head violently slammed into the floor twice by defendant OROPALLO, GARY STROBRIDGE became limp and unresponsive.

57.    Defendant officers HADLOCK, LINEHAN, and THORPE did not intervene or otherwise take steps to prevent defendant OROPALLO from pressing his foot onto GARY STROBRIDGE's head or neck area and slamming GARY STROBRIDGE's head and face into the floor twice.

58.    Upon information and belief, the violent assault of GARY STROBRIDGE occurred between 7:30 p.m. and 8:00 p.m.

59.    Upon information and belief, by approximately 7:51 p.m., GARY STROBRIDGE was found unresponsive by hospital personnel, placed on a stretcher and taken to an emergency department room where CPR was started. Upon information and belief, three rounds of epinephrine were administered with 10 minutes of CPR, and endotracheal intubation, which was complicated by his bleeding. Hospital personnel had noted a significant amount of blood on GARY STROBRIDGE's face, and his nose was bleeding.

60.    GARY STROBRIDGE was diagnosed with having suffered cardiac arrest.

61.    Upon information and belief, an ambulance was thereupon dispatched to St. Joseph's Hospital to transport him to Arnot Ogden Medical Center ("Arnot Ogden"), at 600 Roe Avenue, in Elmira, New York.

62.   At Arnot Ogden, GARY STROBRIDGE was admitted to the intensive care unit. He arrived intubated and sedated.

63.   CT scanning revealed GARY STROBRIDGE had suffered, among other injuries, multiple facial fractures, a right subdural hematoma, C6 and L4 compression fractures and an 8 mm pericardial effusion, all upon information and belief, as a result of the multiple violent assaults committed against him by defendants officers and SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, and THORPE.

64.   Additionally, medical personnel at Arnot Ogden noted bruising of the left and right shoulder, left scapular area, top of right arm, center of forehead and above right brow, and a bloody nose.

65.   GARY STROBRIDGE was then transferred via helicopter for a higher level of care to Upstate Medical University Surgical Intensive Care Unit, located at 750 East Adams Street, Syracuse, New York 13210, with primary diagnoses of cardiac arrest, right orbital blowout fracture, and right maxillary and nasal fracture from assault; secondary diagnoses included acute renal failure secondary to rhabdomyolysis, lactic acidosis, acute hypercapnic respiratory failure, facial lacerations, mild compression deformity of C6 (age indeterminate), hyperkalemia (resolved), hypokalemia, hypocalcemia, elevated anion gap metabolic acidosis, hypotension (improved) and suicidal ideations. An MRI showed changes consistent with diffuse anoxic brain injury.

66.    GARY STROBRIDGE never recovered consciousness following his cardiac arrest on August 22, 2019 and was subsequently pronounced brain dead at 6:30 pm six days later on August 28, 2019.

## CAUSES OF ACTION

**AS AND FOR A FIRST CAUSE OF ACTION, AGAINST DEFENDANTS CITY OF ELMIRA, CITY OF ELMIRA POLICE DEPARTMENT, <u>MONELL</u> CLAIM PERMITTING EXCESSIVE FORCE AND FAILURE TO INTERVENE IN VIOLATION OF PLAINTIFF'S DECEDENT'S FOURTH AND FOURTEENTH AMENDMENTS RIGHTS, ACTIONABLE UNDER 42 U.S.C. § 1983, THE PLAINTIFF ALLEGES AS FOLLOWS:**

67.    Plaintiff hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

68.    At all times mentioned herein, defendants CITY and the ELMIRA POLICE were public actors, a municipality and its law enforcement, administrative arm, acting under color of state law, pursuant to 42 U.S.C. § 1983.

69.    Due to the policies, customs, and actions by officials within the CITY and/or ELMIRA POLICE responsible for establishing the municipal policies, customs and practices relative to effectuating arrests, responding to mental health/mental hygiene law calls, effectuating arrests on mental health or mental hygiene law arrestees, procuring medical care and treatment for said arrestees while in the custody of the CITY and/or ELMIRA POLICE, using the appropriate and authorized level of physical force under all of the circumstances, GARY STROBRIDGE was subjected to excessive use of force and endured pain and suffering, and died as a result of same.

70.    Due to a practice so widespread and consistent that, although not expressly authorized, constituted a custom or usage of which a supervising policymaker of the

CITY and/or ELMIRA POLICE must have been aware, and/or the failure of policymakers of the CITY and/or ELMIRA POLICE to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those, including GARY STROBRIDGE, who come into contact with the municipal and/or law enforcement employees to be free from the use of said unlawful and excessive force in violation of his Fourth and Fourteenth Amendment rights to be free from same.

71.   As a result of the policies, customs, or practices of the CITY and/or the ELMIRA POLICE, the CITY and/or ELMIRA POLICE caused GARY STROBRIDGE to be subjected to an excessive and unlawful use of force by defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, and THORPE, in violation of his Fourth and Fourteenth Amendment right to be free from same.

72.   As a result of the policies, customs, or practices of the CITY and/or the ELMIRA POLICE, the CITY and/or ELMIRA POLICE failed to train defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, and THORPE to intervene to prevent attacks by fellow officers on mental health/mental hygiene law arrestees and detainees from continuing, GARY STROBRIDGE was violently attacked and beaten, suffering serious injury and death, all in violation of his Fourth and Fourteenth Amendment rights to be free from such physical attacks.

73.   WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as

herein set forth below.

**AS AND FOR A SECOND CAUSE OF ACTION, AGAINST DEFENDANTS CITY AND ELMIRA POLICE, STATE-LAW NEGLIGENT TRAINING, HIRING, SUPERVISION, DISCIPLINE, AND RETENTION, THE PLAINTIFF ALLEGES AS FOLLOWS:**

74.   Plaintiff hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

75.   Upon information and belief, defendants CITY and ELMIRA POLICE were in an employer-employee relationship with defendants police officers SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, and THORPE; defendants CITY and ELMIRA POLICE knew or should have known of the defendants police officers-employees' propensity for the conduct which caused the injury prior to the injury's occurrence, and; the torts and constitutional violations above-described were committed by defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, and THORPE while working and engaged in their functions as police officers for defendants CITY and ELMIRA POLICE.

76.   Upon information and belief, defendants CITY and ELMIRA POLICE placed defendants, officers-employees SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, and THORPE in a position to cause foreseeable harm to GARY STROBRIDGE, harm which the GARY STROBRIDGE most probably would have been spared had defendants CITY and ELMIRA POLICE taken reasonable care in supervising, training, hiring, disciplining, and retaining SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, and THORPE.

77.    WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as
herein set forth below.

**AS AND FOR A THIRD CAUSE OF ACTION, AGAINST DEFENDANTS CITY
OF ELMIRA, CITY OF ELMIRA POLICE DEPARTMENT, SOLT, PERRIGO,
LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, STATE-LAW
NEGLIGENCE, THE PLAINTIFF ALLEGES AS FOLLOWS:**

78.    Plaintiff hereby repeats and re-alleges each factual allegation contained in the
preceding paragraphs with the same force and effect as if set forth fully herein.

79.    At all times mentioned above, SOLT, PERRIGO, LINEHAN, BORDEN,
HADLOCK, OROPALLO, SAMUELSON, and THORPE were acting in the scope of
their employment with defendants CITY and ELMIRA POLICE.

80.    In performing a mental hygiene law/mental health arrest of GARY
STROBRIDGE, defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK,
OROPALLO, and SAMUELSON negligently failed to follow general orders, policies
and procedures of the CITY and ELMIRA POLICE, by not promptly taking GARY
STROBRIDGE into custody and negligently allowing him to proceed down Horner
Street.

81.    These defendants negligently, and in violation of defendants CITY and
ELMIRA POLICE orders, polices, and procedures, grabbed GARY STROBRIDGE
from behind, negligently and unnecessary escalating the encounter.

82.    Because at all times defendants SOLT, PERRIGO, LINEHAN, BORDEN,
HADLOCK, OROPALLO, and SAMUELSON were acting in the scope of their
employment with defendants CITY and ELMIRA POLICE, defendants CITY and

ELMIRA POLICE are vicariously liable for defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON's negligence.

83.    WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as herein set forth below.

### AS AND FOR A FOURTH CAUSE OF ACTION, AGAINST DEFENDANTS CITY, ELMIRA POLICE, SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, STATE-LAW BATTERY, THE PLAINTIFF ALLEGES AS FOLLOWS:

84.    Plaintiff hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

85.    Defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON unlawfully and offensively contacted GARY STROBRIDGE's person, without his consent to do so, when they responded to the scene for the Mental Hygiene call at 316B Horner Street.

86.    These defendants battered GARY STROBRIDGE by grabbing him, tasing him, jumping on him, and otherwise excessively using force upon him when unnecessary and not otherwise privileged.

87.    Because at all times defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON were acting in the scope of their employment with defendants CITY and ELMIRA POLICE, defendants CITY and ELMIRA POLICE are vicariously liable for defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON's battery.

88.    WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as herein set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION, AGAINST DEFENDANTS CITY, ELMIRA POLICE, SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, EXCESSIVE USE OF FORCE UNDER THE FOURTH AMENDMENT, ACTIONABLE UNDER 42 U.S.C. § 1983, THE PLAINTIFF ALLEGES AS FOLLOWS:**

89.     Plaintiff hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

90.     Defendants CITY, ELMIRA POLICE, SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON were at all times state actors acting under color of state law, under 42 U.S.C. § 1983.

91.     Under all of the facts and circumstances confronting them, as described in detail above, while at Horner Street, defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON use of force was objectively unreasonable when GARY STROBRIDGE, as a Mental Hygiene Law

arrestee, was grabbed, tackled, tasered, and beaten by defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON.

92.     Upon information and belief, defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON were at all times acting within their scope of employment with the CITY and ELMIRA POLICE. As such, defendants CITY and ELMIRA POLICE are vicariously liable for the unlawful use of excessive force by defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON upon the person of GARY STROBRIDGE occurring on Horner Street, Elmira, New York, described above.

93.     All of the above was committed in violation of GARY STROBRIDGE's right to be from the excessive use of force under the Fourth Amendment.

94.     WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as herein set forth below.

**AS AND FOR A SIXTH CAUSE OF ACTION, AGAINST DEFENDANTS CITY, ELMIRA POLICE, SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, SAMUELSON, FAILURE TO INTERVENE UNDER THE FOURTH AND FOURTEENTH AMENDMENTS, ACTIONABLE UNDER 42 U.S.C. § 1983, THE PLAINTIFF ALLEGES AS FOLLOWS:**

95.     Plaintiff hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

96.     Defendants CITY, ELMIRA POLICE, SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON were at all times state actors acting under color of state law, under 42 U.S.C. § 1983.

97.     Defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON, in responding and arriving at Horner Street concerning GARY STROBRIDGE's Mental Health call, failed to intervene and permitted fellow officers to violate GARY STROBRIDGE's clearly established statutory and constitutional rights, and each and every one of defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON were under a duty to intercede and prevent fellow officers from subjecting GARY STROBRIDGE to excessive force, particularly when defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON observed the use of force and had sufficient time to act to prevent the use of force.

98.    The failures of defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON to intercede to prevent the

unlawful use of force violated GARY STROBRIDGE's right to be free from the use of excessive force upon him under the Fourth Amendment.

99.    Because at all times defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON were acting in the scope of their employment with defendants CITY and ELMIRA POLICE, defendants CITY and ELMIRA POLICE are vicariously liable for defendants SOLT, PERRIGO, LINEHAN, BORDEN, HADLOCK, OROPALLO, and SAMUELSON's failure to intervene.

100.    WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as

herein set forth below.

**AS AND FOR A SEVENTH CAUSE OF ACTION, AGAINST DEFENDANTS CITY, ELMIRA POLICE, HADLOCK, OROPALLO, LINEHAN, AND THORPE, STATE-LAW NEGLIGENCE, THE PLAINTIFF ALLEGES AS FOLLOWS:**

101.    Plaintiff hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

102.    When GARY STROBRIDGE was transported to St. Joseph's Hospital, described above, defendants HADLOCK, OROPALLO, LINEHAN, and THORPE negligently failed to keep GARY STROBRIDGE restrained and secured, and left him unattended, which placed GARY STROBRIDGE in danger of harm or self-harm, and led to his leaving the examination room, and caused GARY STROBRIDGE to be tackled, subdued, and re-restrained, all of which would have been unnecessary had

defendants HADLOCK, OROPALLO, LINEHAN, and THORPE kept him properly restrained in the examination room in the first instance.

103.   The aforesaid negligence of defendants HADLOCK, OROPALLO, LINEHAN, and THORPE while at St. Joseph's Hospital contributed to the unlawful battery and excessive use of force by defendants HADLOCK, OROPALLO, LINEHAN, and THORPE which caused GARY STROBRIDGE serious injuries and ultimately death.

104.   While at St. Joseph's Hospital, during the incident in which defendants HADLOCK, LINEHAN, and THORPE were on top of GARY STROBRIDGE while he was already handcuffed and fully subdued, and while defendant OROPALLO had placed and pressed his foot on the back of GARY STROBRIDGE's neck or head area, followed by defendant OROPALLO violently slamming GARY STROBRIDGE's head and face into the floor twice, defendants HADLOCK, LINEHAN, and THORPE negligently failed to intervene and stop the attack upon GARY STROBRIDGE, which, had they done so, would have prevented GARY STROBRIDGE from suffering serious injuries and/or death.

105.   At all times, defendants HADLOCK, OROPALLO, LINEHAN, and THORPE were on duty and working as police officers in the scope of employment by defendants CITY and ELMIRA POLICE. As such, defendants CITY and ELMIRA POLICE are vicariously liable for the negligence of defendants HADLOCK, OROPALLO, LINEHAN, and THORPE.

106.   WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as herein set forth below

**AS AND FOR AN EIGHTH CAUSE OF ACTION, AGAINST DEFENDANTS CITY, ELMIRA POLICE, HADLOCK, OROPALLO, LINEHAN, THORPE, STATE-LAW BATTERY, THE PLAINTIFF ALLEGES AS FOLLOWS:**

107.   Plaintiff hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

108.   While at St. Joseph's Hospital, after defendants HADLOCK, OROPALLO, LINEHAN, and THORPE negligently left GARY STROBRIDGE unattended and unrestrained in an examination room, GARY STROBRIDGE left the said examination room.

109.   As a consequence of their negligence, defendants HADLOCK, OROPALLO, LINEHAN, and THORPE offensively and without the consent of GARY STROBRIDGE, contacted and battered his person.

110.   Further, defendant OROPALLO battered the person of GARY STROBRIDGE by violently and forcefully and pressing hard his foot into the neck and head area of GARY STROBRIDGE at a time when GARY STROBRIDGE was face down upon the ground, handcuffed, and fully restrained.

111.   Further, defendant OROPALLO continued the aggressive battery of GARY STROBRIDGE when he violently grabbed GARY STROBRIDGE by the hair on this back of his head (all done at a time when GARY STROBRIDGE was still fully subdued and restrained, face down and handcuffed) and twice slammed GARY STROBRIDGE's head and face into the floor.

112.   Because at all times defendants HADLOCK, OROPALLO, LINEHAN, and THORPE were acting in the scope of their employment with defendants CITY and

ELMIRA POLICE, defendants CITY and ELMIRA POLICE are vicariously liable for defendants HADLOCK, OROPALLO, LINEHAN, and THORPE's battery.

113.   As a result of the aforementioned battery, GARY STROBRIDGE endured pain and suffering, serious injuries, and ultimately death.

114.   WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as herein set forth below

**AS AND FOR A NINTH CAUSE OF ACTION, AGAINST DEFENDANTS CITY, ELMIRA POLICE, HADLOCK, OROPALLO, LINEHAN, THORPE, EXCESSIVE USE OF FORCE UNDER THE FOURTH AND FOURTEENTH AMENDMENTS, ACTIONABLE UNDER 42 U.S.C. § 1983, THE PLAINTIFF ALLEGES AS FOLLOWS:**

115.   Plaintiff hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

116.   Defendants CITY, ELMIRA POLICE, HADLOCK, OROPALLO, LINEHAN, and THORPE were state actors, acting under color of state law, pursuant to 42 U.S.C. § 1983.

117.   While at St. Joseph's Hospital, after defendants HADLOCK, OROPALLO, LINEHAN, and THORPE negligently left GARY STROBRIDGE unattended and unrestrained in an examination room, GARY STROBRIDGE left the said examination room.

118.   As a consequence of their negligence, defendants HADLOCK, OROPALLO, LINEHAN, and THORPE offensively and without the consent of GARY STROBRIDGE, contacted and battered his person, using unlawful and excessive force.

119.   Further, defendant OROPALLO battered the person of GARY STROBRIDGE by violently and forcefully and pressing hard his foot into the neck and head area of GARY STROBRIDGE at a time when GARY STROBRIDGE was face down upon the ground, handcuffed, and fully restrained.

120.   Further, defendant OROPALLO continued the aggressive battery of GARY STROBRIDGE when he violently grabbed GARY STROBRIDGE by the hair on this back of his head (all done at a time when GARY STROBRIDGE was still fully subdued and restrained, face down and handcuffed) and twice slammed GARY STROBRIDGE's head and face into the floor.

121.   As a result of the aforementioned unlawful and excessive use of force, GARY STROBRIDGE endured pain and suffering, serious injuries, and ultimately death. All done in violation of GARY STROBRIDGE'S Fourth and Fourteenth Amendment rights to be free from the unlawful use of excessive force.

122.   Because at all times defendants HADLOCK, OROPALLO, LINEHAN, and THORPE were acting in the scope of their employment with defendants CITY and ELMIRA POLICE, defendants CITY and ELMIRA POLICE are vicariously liable for defendants HADLOCK, OROPALLO, LINEHAN, and THORPE's excessive use of force.

123.   WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as herein set forth below.

**AS AND FOR A TENTH CAUSE OF ACTION, AGAINST DEFENDANTS CITY, ELMIRA POLICE, HADLOCK, LINEHAN, THORPE, FAILURE TO INTERVENE UNDER THE FOURTEENTH AMENDMENT, ACTIONABLE UNDER 42 U.S.C. § 1983, THE PLAINTIFF ALLEGES AS FOLLOWS:**

124.   Plaintiff hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

125.   Defendants CITY, ELMIRA POLICE, HADLOCK, OROPALLO, LINEHAN, and THORPE were state actors acting under color of state law pursuant to 42 U.S.C. § 1983.

126.   As set forth in the preceding NINTH CAUSE OF ACTION in this complaint, defendants HADLOCK, OROPALLO, LINEHAN, and THORPE used excessive force upon GARY STROBRIDGE.

127.   Furthermore, defendants HADLOCK, OROPALLO, LINEHAN, and THORPE failed to intervene and permitted fellow officers to violate GARY STROBRIDGE's clearly established statutory and constitutional rights, and each and every one of defendants HADLOCK, OROPALLO, LINEHAN, and THORPE were under a duty to intercede and prevent fellow officers from subjecting GARY STROBRIDGE to excessive force, particularly when defendants HADLOCK, OROPALLO, LINEHAN, and THORPE observed the use of force and had sufficient time to act to prevent the use of force when GARY STROBRIDGE was tackled and handcuffed after leaving the examination room at St. Joseph's Hospital when defendants HADLOCK, OROPALLO, LINEHAN, and THORPE had negligently and recklessly left him unattended and unrestrained.

128.   Furthermore, defendants HADLOCK, LINEHAN, and THORPE failed to intervene and permitted defendant OROPALLO to violate GARY STROBRIDGE's clearly established statutory and constitutional rights, and each and every one of defendants HADLOCK, LINEHAN, and THORPE were under a duty to intercede and prevent defendant OROPALLO from subjecting GARY STROBRIDGE to excessive force, particularly when defendants HADLOCK, LINEHAN, and THORPE observed the use of force and had sufficient time to act to prevent the use of force when defendant OROPALLO violently pressed his foot into GARY STROBRIDGE's neck and head area, and then violently slammed GARY STROBRIDGE's face and head into the floor twice, with great force.

129.   The failures of defendants HADLOCK, OROPALLO, LINEHAN, and THORPE to intercede to prevent the unlawful use of force violated GARY STROBRIDGE's right to be free from the use of excessive force upon him under the Fourth and Fourteenth Amendments.

130.   Because at all times defendants HADLOCK, OROPALLO, LINEHAN, and THORPE were acting within the scope of their employment with defendants CITY and ELMIRA POLICE, defendants CITY and ELMIRA POLICE are vicariously liable for the excessive force conduct of HADLOCK, OROPALLO, LINEHAN, and THORPE.

131.   WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as herein set forth below.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION, AGAINST ALL DEFENDANTS HADLOCK, STATE-LAW WRONGFUL DEATH, THE PLAINTIFF ALLEGES AS FOLLOWS:

132.   Plaintiff hereby repeats and re-alleges each factual allegation contained in the preceding paragraphs with the same force and effect as if set forth fully herein.

133.   Plaintiff's decedent left surviving his father and mother.

134.   Plaintiff's decedent's next of kin were dependent upon decedent for support and maintenance, which they are now deprived of as a result of the aforesaid incident.

135.   As a result of the aforesaid incident, medical, funeral and burial expenses have been incurred.

136.   By reason of decedent's death caused by the negligence of the defendants as aforesaid, his distributees and next of kin have sustained damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

137.   By reason of decedent's death caused by the negligence of the defendants as aforesaid, his distributees have been damaged, and the amount of damages sought herein by the Plaintiff on behalf of the said distributees shall exceed the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

WHEREFORE, Plaintiff, BRYCE STROBRIDGE prays for judgment as herein set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief, as follows:

1. For general damages in a sum according to proof;
2. For special damages in a sum according to proof;
3. For punitive damages against the individual-named Defendants in a sum according to proof;
4. For equitable relief, including but not limited to reinstatement;
5. For front and/or back pay;
6. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;
7. For any and all statutory damages allowed by law;
8. For costs of suit herein incurred; and
9. For such other and further relief as this Court deems just and proper.


DATED:      Buffalo, New York               **VANDETTE PENBERTHY LLP**
            August 22, 2020

                                            By:    *James M. VanDette*
                                                   James M. VanDette, Esq.
                                                   *Attorneys for Plaintiff*
                                                   227 Niagara Street
                                                   Buffalo, New York 14201
                                                   (716) 803-8400
                                                   jvandette@vanpenlaw.com