UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRYCE STROBRIDGE, as Administrator of the
Estate of GARY EDWARD STROBRIDGE, also
known as GARY STROBRIDGE, deceased,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                                  20-CV-1125S
CITY OF ELMIRA, et al.,

                              Defendants.

## I.      Introduction

This is a civil rights action for excessive force and wrongful death applied to the late Gary Edward Strobridge (hereinafter "Decedent") arising from his detention and subsequent death.  Plaintiff Bryce Strobridge ("Plaintiff") is the Decedent's father and administrator of his estate (Docket No. 11, Am. Compl. ¶¶ 10, 7).  Defendants are the City of Elmira, New York (the "City"), its Police Department ("EPD" or "Department"), and police Lieutenant William Solt, Captain John Perrigo, and Officers Joseph Linehan, Brianna Borden, Amani Hadlock, Eduardo Oropallo, and James Samuelson (id. ¶¶ 13-19).

These officers approached, apprehended, and detained Decedent during his mental health episode at his Horner Street home, transported him to St. Joseph's Hospital, Elmira, and retained custody over him while in the hospital.

Plaintiff alleges for Decedent's estate constitutional violations for illegal seizure and administration of excessive use of force during Decedent's episode.

Currently before this Court is Defendants' Motion to Dismiss (Docket No. 12) specified Causes of Action and claims against certain Defendants in the Amended Complaint (Docket No. 11). Defendants seek dismissal of the First, Second, Third, and Seventh Causes of Action (Docket No. 12). They also seek dismissal of claims against the EPD because under New York law the Department is not a suable entity (Docket No. 12, Defs. Memo. at 6); the Department also is named as a Defendant in the Fourth, Eighth, and Eleventh Causes of Action, so its dismissal also would be for these causes of action.

For the reasons stated below, Defendants' Motion (Docket No. 12) is granted in part (dismissing EPD as a Defendant, dismissing claims against the City of Elmira under the First, Third, and Seventh Causes of Action, part of the Second Cause of Action, and dismissing all Defendants under the Third and Seventh Causes of Action in their entirety) and denied in part (dismissing so much of the Second Cause of Action because Plaintiff's Notice of Claim advised Defendants of his claim for negligent training of its officers).

## II.    Background

### A.  Decedent's Mental Hygiene Incident

On August 22, 2019, Decedent suffered a mental health episode, climbing onto the roof of his house on Horner Street in Elmira and Decedent was seen hanging out an upstairs window when Defendant EPD officers arrived (Docket No. 11, Am. Compl. ¶¶ 30-31, 32, 33). Neighbors heard Decedent scream that it was the end of the world as they asked him to reenter his house (id. ¶ 31). EPD officers arrived at Decedent's place to take him into custody under the Mental Hygiene Law (id. ¶ 32).

2

Decedent came in from the roof and left his house with the officers (id. ¶ 36). Plaintiff claims the officers should have followed City and department protocols for effectuating a Mental Hygiene Law arrest but did not do so (id. ¶ 37). Instead, the officers allowed Decedent to walk down the street (id. ¶ 38). One officer then approached Decedent from behind, surprising him and Decedent threw a punch. The unnamed officer tackled and subdued Decedent (id. ¶ 40). Defendant officers joined to control Decedent and a female officer (also not identified in the pleading) tasered Decedent (id. ¶ 41).

Defendant officers transported Decedent to St. Joseph's Hospital, the designated hospital for mental hygiene patients (id. ¶¶ 43, 44). Defendant officers Hadlock, Oropallo, and Linehan accompanied Decedent to St. Joseph's Hospital (id. ¶ 45).

At intake, Decedent was

"noted to be delusional, presenting with a psychiatric problem, with no previous psychiatric history noted. Findings from the psychiatric exam revealed that GARY STROBRIDGE was oriented to person, place and time; his affect was agitated and anxious and his concentration, judgment and insight were poor"

(Id. ¶ 46).

Upon information and belief, Hadlock, Oropallo, and Linehan escorted Decedent, removed his restraints, and left him unattended in an examination room, violating City and departmental policies (id. ¶¶ 47, 48). Decedent then left that room (id. ¶¶ 48, 49). Officers Linehan, Samuelson, Hadlock, and Oropallo proceeded to regain control of Decedent in the corridor outside the examination room (id. ¶ 49), handcuffing Decedent (id. ¶ 50). Upon information and belief, Hadlock, Oropallo, Samuelson, and Linehan placed themselves on Decedent's back with his face on the floor (id. ¶ 51), gaining control of him (id. ¶ 52). While subduing and handcuffing Decedent, Oropallo violently pressed

his foot on Decedent's neck and head and then forcibly grabbed his hair and violently slammed his head on the floor twice (id. ¶¶ 52-55).  After the second blow, Decedent became limp and unresponsive (id. ¶ 56).  Hadlock, Linehan, and Samuelson did not intervene (id. ¶ 57).  Plaintiff alleges that Defendant officers Borden and Samuelson, Lieutenant Solt, and Captain Perrigo were present and participated in the events at St. Joseph's Hospital (id. ¶ 58).

Decedent was found unresponsive and was placed on a stretcher.  He was taken to the emergency department room where CPR was started.   (Id. ¶ 60.)  Hospital personnel noted Decedent had a significant amount of blood on his face and his nose was bleeding (id.).  The emergency department personnel diagnosed Decedent with cardiac arrest (id. ¶ 61).  An ambulance was dispatched to St. Joseph's Hospital and transported Decedent to Arnot Ogden Medical Center and its intensive care unit (id. ¶¶ 62-63).  A CT scan of Decedent revealed he suffered multiple facial fractures, a right subdural hematoma, C6 and L4 compression fractures, and an 8 mm. pericardial effusion, allegedly from the action (or inaction) of the Defendant officers (id. ¶ 64).  Medical staff at Arnot Ogden Medical Center noted Decedent also had bruising of the left and right shoulders, left scapular area, center of forehead, and a bloody noise (id. ¶ 65).

Arnot Ogden Medical Center then transferred Decedent to the Upstate Medical University Surgical Intensive Care Unit in Syracuse for a higher level of care (id. ¶ 66).  Decedent never recovered consciousness following cardiac arrest and was pronounced brain dead six days later, on August 28, 2019 (id. ¶ 67).

Defendant Oropallo later was indicted for assault in the second degree, N.Y. Penal L. § 120.05(2); the indictment alleged that Oropallo inflicted injuries upon Decedent "by

means of striking Mr. Strobridge's face against the hospital floor, a dangerous instrument" (id. ¶ 68).

B.  Prior Proceedings

After Plaintiff received Limited Letters of Administration for the estate of Decedent, on or about November 18, 2019, Plaintiff served a Notice of Claim upon the Defendants (Docket No. 11, Am. Compl. ¶¶ 6-9; see Docket No. 12, Defs. Atty. Decl. Ex. A).   On August 22, 2020, Plaintiff sued Defendants (Docket No. 1).   The parties then stipulated to dismiss claims against Kyle Thorpe (Docket No. 8) and to amendment of the Complaint (Docket No. 9).

C.  Amended Complaint (Docket No. 11)

On February 8, 2021, Plaintiff filed his Amended Complaint (Docket No. 11). There, the First Cause of Action alleges supervisory liability against the City and EPD in violation of 42 U.S.C. § 1983 (id. ¶¶ 70-74).  The Second Cause of Action alleges common law negligent training by the City and EPD (id. ¶¶ 77-78).   The Third Cause of Action claims common law negligence by all Defendants in allowing Decedent to leave his house during his episode and the manner of his apprehension (id. ¶¶ 81-84).  The Fourth Cause of Action alleges state common law battery (against all Defendants, including EPD) when the officers responded to Decedent's residence and grabbed, tasered, and jumped on him (id. ¶¶ 87-89).  The Fifth Cause of Action claims Defendant officers violated 42 U.S.C. § 1983 for excessive use of force against Decedent while detaining him at his house (id. ¶¶ 92-94).  The Sixth Cause of Action alleges a § 1983 claim that these officers also failed to intervene to prevent the excessive use of force (presumably at Decedent's residence), violating Decedent's rights (id. ¶¶ 97-99).

The Seventh Cause of Action alleges that all Defendants (including EPD) committed common law negligence by failing to restrain Decedent properly during his transport to St. Joseph's Hospital (id. ¶¶ 102-05).  The Eighth Cause of Action alleges another count of common law battery against all Defendants (again including EPD) for Decedent wile unattended in St. Joseph's Hospital and assaulted by some officers (id. ¶¶ 108-13).  Oropallo allegedly pressed his foot on Decedent's neck and head face down upon the floor of the hospital room, handcuffed him, and restrained him (id. ¶ 110).  Oropallo then grabbed Decedent's hair from the back of his head and slammed his head twice into the floor (id. ¶ 111).  Plaintiff concludes that Decedent suffered pain, serious injury, and ultimately his death, from this assault (id. ¶ 113).

The Ninth Cause of Action alleges Defendant officers violated Decedent's Fourth and Fourteenth Amendment rights to be free from excessive use of force from Defendants' battery and Oropallo's subsequent battery while Decedent was in the hospital (id. ¶¶ 116-21, 118, 119-20).  The Tenth Cause of Action claims Defendants (principally Hadlock, Linehan, and Samuelson) violated Decedent's Fourteenth Amendment rights by failing to intervene when other officers tackled, handcuffed, and assaulted Decedent in the hospital (id. ¶¶ 57, 124-28, 126).

Finally, the Eleventh Cause of Action alleged Decedent's wrongful death against all Defendants (id. ¶¶ 131-35).

Plaintiff seeks general damages, special damages, statutory damages, and punitive damages, recoupment of reasonable attorneys' fees, and costs (id. PRAYER FOR RELIEF, WHEREFORE Cl. at 32-33).

### D.  Defendants' Motion to Dismiss (Docket No. 12)

Defendants moved (Docket No. 12[1]) for partial dismissal, seeking dismissal of the First, Second, Third, and Seventh Causes of Action on the substance of the allegations and dismissal of claims against the EPD (as alleged in the First, Second, Third, and Seventh Causes of Action, although the Department also is named as a Defendant in other Causes of Action).  Responses to this Motion were due by March 30, 2021, reply initially due by April 6, 2021 (Docket No. 13).  Plaintiff duly responded (Docket No. 14). Defendants moved for extension of time to reply (Docket No. 15), which this Court granted (Docket No. 19), with the reply due by April 28, 2021 (id.).  Defendants then replied (Docket No. 20).  This Motion is deemed submitted and oral argument is unnecessary.

## III.    Discussion

### A.  Applicable Standards—Motion to Dismiss Standard

Defendants have moved for partial dismissal of selected claims on the grounds that the Complaint fails to state a claim for which relief can be granted (Docket No. 12). Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

---

[1]In support of their Motion to Dismiss, Defendants submit their attorney's Declaration, with exhibits of the Notice of Claim, the Complaint, and Amended Complaint; and Memorandum of Law, Docket No. 12. In opposition, Plaintiff submits his Memorandum of Law, Docket No. 14.  Defendants replied by submitting their Reply Memorandum of Law, Docket No. 20.

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference, such as the Notice of Claim (Docket No. 11, Am. Compl. ¶¶ 8-9; Docket No. 12, Defs. Atty. Decl. Ex. A).  Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).  With this incorporation, the Motion to Dismiss need not be converted into a Motion for Summary Judgment under Rule 12(d) (see Docket No. 12, Defs. Memo. at 2; see also Docket No. 14, Pl. Memo. at 6), see also Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual

averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

B.  Elmira Police Department as Defendant

Plaintiff did not respond to Defendants' argument for dismissal of EPD as a Defendant.  Defendants are correct (Docket No. 12, Defs. Memo. at 6) that as a matter of state law the Elmira Police Department is not a suable entity separate from the City of Elmira, Abram v. Town of Cheektowaga Police Dep't, No. 18CV1267, 2020 WL 3513617, at *4 (W.D.N.Y. June 29, 2020) (Skretny, J.).  "Under New York law, departments which are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot sue or be sued," S.W. by J.W. v. Warren, 528 F. Supp. 2d 282, 302 (S.D.N.Y. 2007) (citation omitted).  Defendants' Motion (Docket No. 12) citing claims against the Elmira Police Department is granted.

For the same rationale Plaintiff's other claims against the EPD alleged in the Fourth, Eighth, and Eleventh Causes of Action are dismissed.

This Court next considers the allegations against the City of Elmira in the First, Second, Third, and Seventh Causes of Action.

C.  Municipal Liability of the City of Elmira (First Cause of Action)
1.  Applicable Standards—Monell Municipal Liability

As this Court observed in Romanac v. Town of Cheektowaga, No. 17CV334, 2021 WL 409859, at *9-10 (W.D.N.Y. Feb. 5, 2021) (Skrenty, J.), "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor," Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).  As observed by the Supreme Court,

"while Congress never questioned its power to impose civil liability on
municipalities for their <u>own</u> illegal acts, Congress did doubt its constitutional
power to impose such liability in order to oblige municipalities to control the
conduct of *others* " (citing [<u>Monell v. Department of Soc. Serv.</u>, 436 U.S.
658, 665-83, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)] <u>Monell</u>, <u>supra</u>, at 665–
683, 98 S.Ct., at 2022–2032). We have consistently refused to hold
municipalities liable under a theory of <u>respondeat superior</u>."

<u>Id.</u> (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d

452 (1986)).  This also is based in part on the text of that section that imposes liability

upon the person who deprived a federal right, <u>id.</u>

To prevail against a municipality under § 1983 Plaintiff must allege the following:

- actions were taken under color of law (not contested here);

- the deprivation of constitutional or statutory rights;

- causation, that is an official municipal policy causing the constitutional
  injury; and

- damages.

<u>Roe v. City of Waterbury</u>, 542 F.3d 31, 36 (2d Cir. 2008); <u>see also</u> <u>Batista v.</u>

<u>Rodriquez</u>, 702 F.2d 393, 397 (2d Cir. 1983); <u>City of Oklahoma City v. Tuttle</u>, 471 U.S.

808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); <u>Monell</u>, <u>supra</u>, 436 U.S. at 694 (plaintiff

must identify the municipal policy or custom that caused plaintiff's injury).  That policy or

custom must be "the moving force" behind a violation of federal rights, <u>City of Canton v.</u>

<u>Harris</u>, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)  Plaintiff also needs

to show that the policy or custom proximately caused the deprivation, <u>Owen v. City of</u>

<u>Independence</u>, 445 U.S. 622, 633, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)).

"In determining municipal liability, it is necessary to conduct a separate
inquiry into whether there exists a 'policy' or 'custom.'" <u>Davis v. City of New</u>
<u>York</u>, 228 F. Supp.2d 327, 336 (S.D.N.Y. 2002), <u>aff'd</u>, 75 Fed. Appx. 827
(2d Cir. 2003).  Normally, "a custom or policy cannot be shown by pointing

> to a single instance of unconstitutional conduct by a mere employee of the [municipality]."   Newton [v. City of N.Y., 566 F. Supp.2d 256 (S.D.N.Y. 2008)], 566 F. Supp.2d at 271; see also City of Oklahoma [City] v. Tuttle, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  (plurality opinion)); Brogdon v. City of New Rochelle, 200 F. Supp.2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken."   Newton, 566 F. Supp.2d at 271 (footnote omitted).

Dellutri v. Village of Elmsford, 895 F. Supp.2d 555, 565 (S.D.N.Y. 2012).

A "general and conclusory allegation of a municipal policy or custom fails to state a facially plausible Monell claim," Valdiviezo v. Boyer, 752 F. App'x 29, 31 (2d Cir. 2018); Bryant v. Monroe County, No. 19CV6474, 2022 WL 103889, at *7 (W.D.N.Y. Jan. 11, 2022) (Siragusa, J.).

There is no heightened pleading standard for Monell claims, Johnson v. City of Shelby, Miss., 574 U.S. 10, 12, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014) (per curiam); Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coord. Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (see Docket No. 14, Pl. Memo. at 8-9).  The allegation of failure to train leading to constitutional violation alleges a Monell claim, Best v. Village of Ellenville, No. 1:14-CV-968, 2014 WL 6387146, at *2 (N.D.N.Y. Nov. 14, 2014) (citing cases).

2.  Parties' Contentions

Defendants argue that the Amended Complaint does not allege a policy, practice, or custom that led to Decedent's injuries (Docket No. 12, Defs. Memo. at 3-4).  Plaintiff fails to state other instances of a policy, custom, or practice and does not identify a City policymaker responsible for Plaintiff's injuries (id. at 3).  Defendants contend Plaintiff's conclusory statements do not provide an inference that the manner of enforcement of Mental Hygiene Law arrests deprived Decedent of his constitutional rights (id.).  Plaintiff merely focuses upon the actual incident without citing other instances of a policy, custom, or practice (id. at 4, citing Tuttle, supra, 471 U.S. at 823-24).

Plaintiff responds that he alleged that the City's custom, policy, and practices in failing to train officers in conducting mental hygiene arrests lead to Decedent's injuries (Docket No. 14, Pl. Memo. at 7-8).  He counters that a single instance of the policy, custom, and practice may allege liability (id. at 8), De Michele v. City of N.Y., No. 09 Civ. 9334, 2012 WL 4354763, at *20 (S.D.N.Y. Sept. 24, 2012).

Defendants reply that Plaintiff still needed to plead facts of a municipal policy that "has substantial plausibility," Johnson, supra, 574 U.S. at 12 (Docket No. 20, Defs. Reply Memo. at 1).  A single incident may manifest a municipal policy or custom only if made as a deliberate choice of a policymaker, Pembaur, supra, 475 U.S. at 483-84 (id. at 1-2); Spear v. City of Buffalo, No. 11CV12, 2014 WL 1053987, at *9 (W.D.N.Y. Mar. 18, 2014) (Foschio, Mag. J.) (Report & Rec.), adopted, 2014 WL 11347759 (W.D.N.Y. Apr. 4, 2014) (Arcara, J.).

3.  Municipal Policy

In the First Cause of Action, Plaintiff alleges violation of City policy by excessive use of force imposed on Decedent (Docket No. 11, Am. Compl. ¶¶ 71, 20-29).  He alleges a practice of failing to train officers on how to apprehend someone during a mental hygiene incident or to supervise these officers during such an incident (id. ¶¶ 72, 74). Stating the municipal and departmental policies and general orders for conducting arrests, contending with mental hygiene interventions, and the use of tasers and the use of force generally, Plaintiff claims the Defendant officers violated these policies and procedures in their conduct toward the Decedent (id. ¶¶ 21, 22-29, 71).  As a widespread practice, Plaintiff concludes a custom or usage existed where the City's supervisory policymakers must have been aware of the officers' inadequate training and supervision (id. ¶ 72).

First, Plaintiff merely alleges the single practice of failure to train leading to the violations of Decedent's rights.  The City is not responsible under § 1983 for an isolated unconstitutional act, Curry v. City of Syracuse, 316 F.3d 324, 330 (2d Cir. 2003). "Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality],'" Dellutri, supra, 895 F. Supp.2d at 565 (quoting Newton, supra, 566 F. Supp.2d at 271).

Alleging failure to follow existing policy fails to state a Monell claim, Ruiz v. Westchester Cnty., No. 18-CV-7007, 2020 WL 4340788, at *9 (S.D.N.Y. July 28, 2020); Walker v. Shaw, No. 08-CV-10043, 2010 WL 2541711, at *7 (S.D.N.Y. June 23, 2010) (alleged failure to follow a policy "is the antithesis of a link between policy and action").

Plaintiff merely alleges that the officers failed to follow existing policy because of a practice of deficient training or supervision. While the Twombly/Iqbal standard does not require heightened pleading, that standard does require plausible pleading. Plaintiff's bare allegation of lack of training or supervision does not allege a plausible claim of a municipal custom or practice that justify the officers' actions.

To allege a failure to train claim "Plaintiff must allege facts which support an inference that the County failed to train its employees, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries. See Treadwell v. County of Putnam, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016)," Ruiz, supra, 2020 WL 4340788, at *8. He must allege "a specific deficiency in the municipality's training," id. (quoting Tieman v. City of Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015)).

> "A failure to train constitutes a policy or custom that is actionable under § 1983 only where 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.' City of Canton, Ohio v. Harris, 489 U.S. 378, 390 [109 S.Ct. 1197, 103 L.Ed.2d 412] (1989) (footnote omitted)."

Ruiz, supra, 2020 WL 4340788, at *8.

As the Plaintiff in the Ruiz case insufficiently alleged failure to train and supervise with boilerplate assertions in his pro se Complaint, id. at *8, 1, Plaintiff Bryce Strobridge here merely alleged the failure to train and supervise as manifested by the Defendant officers violating City policies. Strobridge has not alleged specific deficiency in training of the orders or supervision of Defendant officers to state the City's vicarious liability.

### 4. Conclusion

Defendants' Motion to Dismiss (Docket No. 12) claims against the City of Elmira alleged in the First Cause of Action for failure to state <u>Monell</u> vicarious liability claims is granted.

### D. Failure to State Claim in Notice of Claim (Second Cause of Action)

Defendants argues that Plaintiff failed to allege his Second Cause of Action because his Notice of Claim did not allege negligent training.

### 1. Notice of Claim Standard

Under New York law, a notice of claim is a condition precedent for suing a municipality or its employees for a tort, N.Y. Gen. Mun. Law § 50-e(1)(a); <u>O'Brien v. City of Syracuse</u>, 54 N.Y.2d 353, 358, 445 N.Y.S.2d 687, 689 (1981) (Docket No. 12, Defs. Memo. at 5). The notice must state "'the time when, the place where and the manner in which the claims arose' (General Municipal Law, § 50–e, subd. 2). The test of the notice's sufficiency is whether it includes information sufficient to enable the city to investigate the claim,'" <u>id.</u> at 358, 445 N.Y.S.2d at 689; <u>Rosenbaum v. City of N.Y.</u>, 8 N.Y.3d 1, 10-11, 828 N.Y.S.2d 228, 233 (2006) (<u>see</u> Docket No. 14, Pl. Memo. at 9).

### 2. Parties' Contentions

Defendants also contend that Plaintiff failed to allege in the Notice of Claim assertions of negligent training now alleged in the Second Cause of Action (Docket No. 12, Defs. Memo. at 5). In reply, they claim that the Notice of Claim does not reference the training of Defendant officers, inadequacies of that training, or that the City should have been on notice of the propensity of violent behavior when it hired the officers (Docket No. 20, Defs. Reply Memo. at 3).

Plaintiff argues that the Notice need only state enough facts for the municipality to investigate his claims and that the Notice here advised the City of its negligent training and supervision (Docket No. 14, Pl. Memo. at 9-12).  A claimant need not give notice of his legal theories or plead with more specificity in a Notice of Claim (id. at 10, 12).  He claims that his Notice of Claim provided sufficient information for the City to investigate his claims (id. at 9).

> 3.   Negligent Training, Hiring, and Supervision Claims (Second Cause of Action)

Plaintiff incorporated by reference the Notice of Claim (Docket No. 11, Am. Compl. ¶ 8).  Therefore, the Motion to Dismiss is not converted into a Summary Judgment Motion and this Court considers the contents of that Notice.  Plaintiff alleged in the Notice of Claim that

> "the incident herein described and the resultant injuries and damages sustained were caused as a result of the negligence, carelessness, recklessness and/or unlawful conduct on the part of the agents, servants and/or employees of CITY OF ELMIRA and/or CITY OF ELMIRA POLICE DEPARTMENT and/or JOHN AND/OR JANE DOE(S) said being CITY OF ELMIRA POLICE DEPARTMENT PERSONNEL, and more particularly, among other things, . . . in <u>failing and omitting to have and provide police officers with sufficient experience to handle similar circumstances</u>, in allowing and permitting its personnel and/or police officers to cause injury to the decedent, and in failing and omitting to provide the proper and necessary medical care to the decedent."

(Docket No. 12, Defs. Atty. Decl., Ex. A, ¶ 11 (emphasis added); see Docket No. 14, Pl. Memo. at 11).

The Notice of Claim sufficiently alleges deficient training to allow Defendants to investigate Plaintiff's claim to allow this action.  Plaintiff claimed that the City failed to provide officers with sufficient experience to handle this mental hygiene incident.  This asserts a failure to train to allow the City to investigate.  He need not allege "literal nicety

or exactness," <u>Miranda v. S. Country Cent. Sch. Dist.</u>, 461 F. Supp.3d 17, 30 (E.D.N.Y. 2020) (<u>see</u> Docket No. 14, Pl. Memo. at 12).   The court also recognized that the General Municipal Law provides a safe harbor permitting correction or disregard of mistakes or irregularities if the other party was not prejudiced, <u>id.</u>, citing N.Y. Gen. Mun. Law § 50-e(6); <u>see also</u> <u>Parise v. New York City Dep't of Sanitation</u>, 306 F. App'x 695, 698 (2d Cir. 2009) (summary Order) (citing cases, describing scope of permitted corrections under § 50-e(6)).   In <u>Parise</u>, the Second Circuit recognized the quantity of information necessary for a Notice of Claim, <u>Parise</u>, <u>supra</u>, 306 F. App'x 695.   That Notice was deficient there because the claimants Vincent and Debra Parise failed to state the cause for Vincent's fall or any theory of defendant's liability, <u>id.</u> at 697.   The Second Circuit concluded that this defect was prejudicial to the defendant Department of Sanitation and the court affirmed defendant's summary judgment dismissal of the claim, <u>id.</u> at 698.

In Strobridge's case, Plaintiff alleged enough of his theory of deficient training to allow the City to investigate that claim.   Therefore, Plaintiff met the predicate for alleging the Second Cause of Action for negligent training.

This Notice of Claim, however, does not specify municipal liability from negligent hiring or supervision of the Defendant officers.   The Notice of Claim merely alleges the facts of the assault upon Decedent but does not mention supervision of the assaulting officers, the claim was insufficiently raised, <u>Vaynshelbaum v. City of N.Y.</u>, 140 A.D.3d 406. 407, 33 N.Y.S.3d 37, 38 (1st Dep't 2016) (notice of claim did not sufficiently provide notice of the time, place, and nature of intentional battery claim to enable investigation) (Docket No. 20, Defs. Reply Memo. at 4; <u>but cf.</u> Docket No. 14, Pl. Memo. at 10).   The Notice made no mention of negligent hiring or supervision of the John Doe officers as

stated in the Notice of Claim and failed to provide a basis for the City's investigation of negligent hiring, retention, and supervision claims.  Relevant to that claim, the Notice of Claim merely alleges that the City "allow[ed] and permit[ed] its personnel and/or police officers to cause injury to the decedent" (Docket No. 12, Defs. Atty. Decl., Ex. A, ¶ 11). This statement fails to allege how the City permitted these injuries to occur without explicitly alleging negligent hiring or supervision to permit a City investigation.

Therefore, Defendants' Motion to Dismiss (Docket No. 12) the Second Cause of Action alleging negligent training for any deficiency in the Notice of Claim prior to commencing this action is denied.  Their Motion seeking dismissal of the unstated claims for negligent hiring and supervision is granted.

Next, this Court takes up Defendants' arguments against allegations of negligence in the Third and Seventh Causes of Action.

### E.  Negligence for Police Conduct (Third and Seventh Causes of Action)

#### 1.  Applicable Standards

"Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution," Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994), citing Boose v. City of Rochester, 71 A.D.2d 59, 62, 421 N.Y.S.2d 740, 744 (4th Dep't 1979).  The court in Bernard observed that "the Boose decision does not merely criticize vague negligence claims, but bars all negligence claims arising out of allegedly improper identification procedures during an arrest.  The decision limits claims for relief available to plaintiffs in Boose's position to false arrest and malicious prosecution," Bernard, supra, 25 F.3d at 102.  There is no cause of action for negligent

investigation in New York law, Medina v. City of N.Y., 102 A.D.3d 101, 108, 953 N.Y.S.2d 43, 48 (1st Dep't 2012) (see Docket No. 12, Defs. Memo. at 5).  Plaintiff concedes that New York law also does not recognize "general negligence relating to the exercise of the appropriate degree of care in effecting an arrest" (Docket No. 14, Pl. Memo. at 13, citing Frigerio v. United States, No. 10 Civ. 9086, 2011 U.S. Dist. LEXIS 80708, at *29 & n.119, 2011 WL 3163330, at *9 & n.119 (S.D.N.Y. July 21, 2011); see also Docket No. 20, Defs. Reply Memo. at 4).  Plaintiff may only seek tort relief for false arrest, false imprisonment, or malicious prosecution and not for general negligence, Frigerio, supra, 2011 WL 3163330, at *9 & n.120.

Plaintiff cites Mental Hygiene Law immunity (Docket No. 14, Pl. Memo. at 13; see also Docket No. 20, Defs. Reply Memo. at 4-5) to justify his negligence claim. Section 9.59 of the New York Mental Hygiene Law grants immunity to police officers (among other first responders or hospitals) "who are taking into custody and transporting a person to a hospital as authorized by this article" for liability

> "for damages for injuries alleged to have been sustained by such person or for the death of such person alleged to have occurred by reason of an act or omission unless it is established that such injuries or such death was caused by gross negligence on the part of such . . . police officer,"

N.Y. Mental Hyg. L. § 9.59(a).

Gross negligence under § 9.59 is reckless disregard of the transported person's rights or intentional wrongdoing, Woody v. Astoria Gen. Hosp., Inc., 264 A.D.2d 318, 319, 694 N.Y.S.2d 41, 42 (1st Dep't 1999); Colnaghi U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd., 81 N.Y.2d 821, 823-24, 595 N.Y.S.2d 381, 383 (1993); Glowczenski v. Taser Int'l Inc., No. CV04-4052(WDW), 2010 WL 1948249, at *4 (E.D.N.Y. May 13, 2010) (Wall, Mag. J.).

The New York Court of Appeals held that "'gross negligence' differs in kind, not only degree, from claims of ordinary negligence.  It is conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing," <u>Colnaghi, U.S.A.</u>, <u>supra</u>, 81 N.Y.2d at 823-24, 595 N.Y.S.2d at 383.  The Fourth Department once held that a plaintiff failed to meet his burden "of establishing that the police officers' conduct" evinced " 'a reckless disregard for the rights of others or smack[] of intentional wrongdoing'" to assert gross negligence on the part of those officers, <u>Bower v. City of Lockport</u>, 115 A.D.3d 1201, 1204, 982 N.Y.S.2d 621, 625 (4th Dep't 2014).

Additionally, the district court in <u>Glowczenski</u> observed,

> "Gross negligence has 'often been equated with recklessness in the Second Circuit,' and is ' "the kind of conduct ... where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." ' <u>See</u> <u>Poe v. Leonard</u>, 282 F.3d 123, 140 (2d Cir. 2002) (quoting <u>Bryant v. Mafucci</u>, 932 F.2d 979, 985 (2d Cir. 1991)).  Gross negligence is 'conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing ... [or] the commission or omission of an act or duty owing by one person to a second party which discloses a failure to exercise slight diligence. In other words, the act or omission must be of an aggravated character as distinguished from the failure to exercise ordinary care.' <u>Greenberg v. Rubin</u>, 2001 WL 1722886, *4 (Sup. Ct. Kings County, Oct. 17, 2001) (internal quotation marks and citations omitted)."

<u>Glowczenski</u>, <u>supra</u>, 2010 WL 1948249, at *4.  The district court concluded, however, that Plaintiffs (Decedent David Glowczenski's co-administratrixes) failed to establish gross negligence in David Glowczenski's treatment by volunteer ambulance company defendants, <u>id.</u> at *4, 1.

### 2.  Parties' Contentions

Defendants argue that New York law does not recognize negligence for police misconduct (Docket No. 12, Defs. Memo. at 5-6). Alternatively, they argue that Plaintiff

has failed to allege the duty the officers owed Decedent to allege a negligence claim (Docket No. 12, Defs. Memo. at 6).

Plaintiff responds that New York and Second Circuit cases recognize negligence arising from police misconduct (Docket No. 14, Pl. Memo. at 2, 13-14), specifically gross negligence (id. at 13, 14), Glowczenski, supra, 2010 WL 1948249, at *4.  Plaintiff cites the immunity under New York Mental Hygiene Law § 9.59 as an example of negligence recognized in New York common law (id. at 13).

Defendants reply that, even if Plaintiff alleges gross negligence, it still is based on a claim not cognizable under New York law (Docket No. 20, Defs. Reply Memo. at 5). Mental Hygiene Law § 9.59 only creates immunity for police officer transportation of an individual under that law and does not implicitly create a cause of action for activities not immunized by that statute (id.).

### 3.  Discussion

Ordinary negligence is not applicable for police misconduct in affecting an arrest, see Frigerio, supra, 2011 WL 3163330, at *9 & n.119, or in police investigations, Medina, supra, 102 A.D.3d at 108, 953 N.Y.S.2d at 48.  Other torts, such as false arrest or malicious prosecution, address instances of police misconduct, see Frigerio, supra, 2011 WL 3163330, at *9 & n.119; Bernard, supra, 25 F.3d at 102.

The Complaint does not allege false arrest or false imprisonment (which address the loss of Decedent's liberty).  Plaintiff concedes that he is not alleging ordinary negligence in his Third Cause of Action (Docket No. 14, Pl. Memo. at 13); otherwise, Mental Hygiene Law § 9.59(a) would immunize the police officers for ordinary negligence in the manner of transport of the Decedent.  Given that New York law does not recognize

ordinary negligence for police misconduct, Plaintiff alleges gross negligence that overcomes § 9.59 immunity (id.).

While § 9.59 implies that gross negligence might exist as a tort because that statute does not immunize police and other first responders from it, cf. Bower, supra, 115 A.D.3d at 1204, 982 N.Y.S.2 at 625 (gross negligence of police officers alleged but not proven), that statute does not create a cause of action for gross negligence (Docket No. 20, Defs. Reply Memo. at 4-5), Dunkelberger v. Dunkelberger, No. 14-CV-3877, 2015 WL 5730605, at *22 (S.D.N.Y. Sept. 30, 2015) (Mental Hygiene Law held not to create private right of action). Further, Plaintiff has not established that New York law recognizes gross negligence in police operations.

As Defendants note (id. at 5), where a claim is alleged as battery or excessive force, courts have rejected alleging the same conduct as negligence or gross negligence, Ortiz v. City of N.Y., No. 15CV2206, 2016 WL 7009059, at *3 (S.D.N.Y. Nov. 30, 2016). As in Ortiz, supra, Plaintiff here alleges only egregious misconduct and intentional acts against the Decedent, thus any claim of negligence (ordinary or gross) is dismissed.

The Third Cause of Action alleges negligence in allowing Decedent to leave his house after the mental health incident and in how he was apprehended (Docket No. 11, Am. Compl. ¶¶ 80-84, 38, 40-42). The Amended Complaint does not allege gross negligence, either reckless disregard or intentional conduct. If viewed as ordinary negligence, this apprehension is immunized by § 9.59. Since Plaintiff alleges only intentional conduct, he fails to state negligence. Defendants' Motion to Dismiss this claim is granted.

As for the Seventh Cause of Action, the events move forward to Decedent's custody while in St. Joseph's Hospital (Docket No. 11, Am. Compl. ¶¶ 101-06, 48-52). Plaintiff alleges the negligent treatment of Decedent in his apprehension at Horner Street (alleged in the Third Cause of Action) was grossly negligent.  He then couples this conduct to Defendants' treatment of Decedent later in the hospital, from leaving him unrestrained and unattended, then using excessive force to restrain him.  (Docket No. 14, Pl. Memo. at 13-14).  Since Plaintiff failed to allege Defendants' gross negligence or conduct distinct from his excessive force and battery claims, he fails to state a claim for gross negligence during Decedent's hospitalization.

### 4.  Conclusion

Since Plaintiff has not alleged gross negligence, Defendants' Motion to Dismiss (Docket No. 12) the Third and Seventh Causes of Action is granted.

## IV.   Conclusion

First, claims against Defendant Elmira Police Department (alleged in the First, Second, Third, Fourth, Seventh, Eighth, and Eleventh Causes of Action) are dismissed because the Department lacks the capacity to be sued under New York law.

Second, claims against Defendant City of Elmira in the First Cause of Action for Monell liability are dismissed for failing to allege a failure to train or supervise these Defendant officers.  Defendants' Motion to Dismiss (Docket No. 12) these claims is granted, thus dismissing this Cause of Action entirely.

Third, Plaintiff alleged in the Notice of Claim sufficient facts for his claim for negligent training by the City now alleged in the Second Cause of Action.  Defendants' Motion to Dismiss (Docket No. 12) the Second Cause of Action for a purported deficient

Notice of Claim is denied.  Their Motion to Dismiss as to alleged deficient supervision and hiring, however, is granted.

Fourth, Plaintiff's Third and Seventh Causes of Action against all defendants is dismissed because Plaintiff does not allege gross negligence to overcome statutory immunity and the absence of a cause of action for negligent police conduct.  Defendants' Motion to Dismiss (id.) these claims in their entirety is granted.

The following claims remain after this Motion:  the Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Causes of Action against the individual officer Defendants; the Fourth (against the City but not against the Elmira Police Department), Eighth (against the City but not the Elmira Police Department), and Eleventh Causes of Action (also against the City only), and portions of the Second Cause of Action against the City (but not the Elmira Police Department) but only alleging the City's failure to train.

Plaintiff shall amend the Complaint again to allege the surviving claims and remove the dismissed claims and the Elmira Police Department as a Defendant.  Plaintiff thus has twenty-one (21) days from entry of this Decision and Order to file this Second Amended Complaint.  Remaining Defendants then shall have twenty-one (21) days from service of the amended pleading to answer or move to dismiss the amended pleading. Once this pleading has been completed, this case will be referred to a Magistrate Judge to conduct further pretrial proceedings.

## V.    Orders

IT HEREBY IS ORDERED, that Defendants' Partial Motion to Dismiss (Docket No. 12) is GRANTED IN PART and DENIED IN PART as set forth in this Decision and Order.

FURTHER, Plaintiff shall file a Second Amended Complaint (consistent with this Decision and Order) within twenty-one (21) days of entry of this Decision and Order.

FURTHER, Defendants shall answer or move to dismiss this amended pleading within twenty-one (21) days of service.

FURTHER, this case shall be referred to a Magistrate Judge to conduct further pretrial proceedings.

SO ORDERED.


Dated:         February 28, 2022
               Buffalo, New York


                                                    s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                 United States District Judge